Good morning and welcome to the Ninth Circuit at the William S. Richardson School of Law at the University of Hawaii at Manoa. Judge Berzon, Judge Van Dyke, and I would like to extend our thanks to Dean Nelson and to all the faculty and staff here who have accommodated us. We are very grateful for your hospitality. The case of the United States against Lindsay has been submitted on briefs. So our first case for argument this morning is United States against Vinge. Counsel, you may proceed. May it please the court, Assistant United States Attorney Marshal Silverberg. My name is Arlene Kimura and I represent Mr. Daniel Vinge. May I reserve two minutes for rebuttal, please? You may, just keep an eye on your clock. Thank you. The central issue in this case is what are the facts that were relied upon by the district court to determine whether there should have been an organizer enhancement for Mr. Vinge in his sentencing? According to the Whitney Ninth Circuit 2012 case, the sentencing court cannot rely upon the pre-sentence investigation report conclusions and statements. It must need to conduct its own inquiry into the record. In examining the record, Mr. Vinge observes there are two points to consider. First, the sentencing court acknowledged that it also took the plea and the sentencing of Mr. Vinge co-defendant, Genghis Kaloiva. Now, in that, the sentencing judge did state that Mr. Vinge and Mr. Kaloiva were working together and they were expecting the delivery of the package and he, meaning Mr. Vinge, was part of that scheme. Now, the sentencing court also concluded that in order to find the organizer enhancement, it relied upon the statements made by Mr. Vinge, the interview of Mr. Vinge by the law enforcement officers, as well as the pre-sentence report and what else he said. But when you examine those sections of the record, they do not support the organizer enhancement. For that, there are three points. The first one is that in Mr. Vinge's change of plea hearing, he did talk about, he did order the drugs and he did collect the money from his customers and he did keep track of the package while he was going through the United States Postal Service system and his co-defendant also jointly kept track of the package. The second point is that what is, in your view, the applicable standard here in terms of the organizer? The applicable standard for the organizer enhancement is that there needs to be organizational control. Now, according to the Dole case, there were two parts, right? If there was a leader, you would have certain factors to consider. If it was an organizer, he would have had to organize the individuals involved in that. And you agree that they're distinct, that you don't need the same kind of control for an organizer. Yes, I do agree there is a difference between a leadership and an organizer enhancement control requirement, but there still needs to be control. And the point is, in the record, there was no reference to control. What do you mean there's a different kind of control? There needs to be control of what? In the organizer enhancement, yes, there needs to be organizational control, but it cannot be organizational control over the process, the shipment of drugs and so on. It has to be organizational control over the participants, the individuals, the customers that the drugs are sold to. And in this case, if that's your understanding of what being an organizer is, then how is it different from being a leader, right? Because the leader has control over the subordinates. So why, I mean, to be an organizer seems like it should require something less than that or different from that, right? Yes, an organizer would require less control than a leader, but there would still need to be organizational control over the individuals. In other words, they would be directing the customers, for instance. When the drug comes in, you know, like you need to come here and I'll give it to you and so forth. I mean, so, I mean, if somebody says, you know, here's my idea for a drug conspiracy, you know, I'm not telling you, and here's, you know, you're going to do this, you'll do that, you know, the other person will do the other thing. I'm not telling you you have to do it, but all of the other participants just think, well, that sounds like a really great idea, like we'll go along with that plan. I mean, that sounds to me like the work of an organizer, but I'm not sure there's control. So, in that scenario, would you say that the organizer enhancement is appropriate? Not necessarily. In the organizer enhancement proposal, there would have to be the direction of the individual to, let's say, marshal those individuals together as to when the drugs would be coming and how they would be distributed to them, as well as possibly after the drugs go to those customers, there would be some involvement in terms of the organizer with the distribution of the drugs from his customers to the individuals below him. And that also relates to one point in the pre-sentence report. The pre-sentence report talks about sub-distributors, and it's an erroneous conclusion in the pre-sentence report, because, yes, there was the assumption that Mr. Binge sold the drugs to his customers, and obviously his customers would have to sell the drugs to somebody else to get the money to give it to him, to give it to his source of supply. But he had no control over his customers, who he gets sold to, how much gets sold, or what price would ultimately be paid for those drugs. And in the pre-sentence report, when it refers to sub-distributors, there is the implication and the connotation that it's Mr. Binge sub-distributors. And that's what the sentencing court also latched on to. And that is incorrect, because as found in the Whitney case, as I stated before, the court cannot, the sentencing court cannot just rely on the conclusions in the pre-sentence report, that, for instance, there was a sub-distributor and it belongs to the organizer, because the underlying facts do not support that conclusion. Exactly what conclusion do the underlying facts not support? I'm sorry? Exactly what conclusion are you saying that the underlying facts don't support? The underlying facts do not support the organizer enhancement, because there was no organizational control. No, but you said something specific that was in the pre-sentence report that you said was not supported. Right, but in the pre-sentence report, there was the statement of sub-distributors. In other words, that Mr. Binge got the drugs from the source of supply, gave it to his sub-distributors, and then it was sold. And the way it was written in the pre-sentence report, it's like the sub-distributors were Mr. Binge's sub-distributors, and that he would be involved with them, as well as those drugs being then sold to the ultimate consumers, I guess. I think, as I read that language, it's talking about the people that he's working with, the other people. It's calling them his sub-distributors, because they're distributors. They're distributing the drugs, and it's treating them like they're his sub-distributors. Are you saying we should read it differently than that? Yes, Your Honor, because they are not his sub-distributors. They are his customers. As to what those individuals, his customers, want to do with the drugs, it's up to them. He has no control over that. What you mean is, did he choose the customers, or they chose him? I'm sorry? Did he choose the customers, or they chose him? Or do we know that? It's not really stated in the record. You wanted to reserve some time. Yes, Your Honor, please. You may. We'll hear from the government. Good morning. May it please the Court. Marshall Silverberg, on behalf of the United States, Mr. Comer, and may it please the Court. The defendant's argument, as he states here, is contrary to this Court's decision, United States v. Doe. One of my concerns is that it seems to me that our case law is not recently clear, to put it mildly. I understand what Doe says, but then you have Kabir, which was later, and it seems to say that for leaders and organizers, to qualify as an organizer or leader, a defendant must have exercised control over others, citing United States v. Harris, which was also after Doe. And that's quoting United States v. O'Vea, which was from 1996. So where are we on this standard? Well, I agree that Kabir probably could have been clearer. I think the first part of that language in the earlier part of the decision is referring to the first part of the Doe test, that is, the control test. The second part of the Doe test— Well, he might think that, but it says to qualify as an organizer or a leader. Right. A defendant must have exercised control over others. And then when he gets to the facts before it, it distinguishes Harris by saying, well, there are only two people in Harris versus the organization that we have here, and they don't discuss organizational control. And Mr. Kamara said it's organizational authority. You don't have to control people. You have to have an organizational coordination or some way of bringing together the buyers and the sellers. And that's exactly what we have here. The facts here are indistinguishable from Doe. You have a defendant here who has the supplier. He calls the supplier and says, how much drugs do you have to distribute or to sell to me? He then contacts his buyer, the sub-distributors, and says, how many drugs do you want to buy? He charges them $7,000 a pound for methamphetamine. He pays only $2,000 to his supplier. So he's making $4,500 for every pound of methamphetamine he's selling. There's a whole group of them. So he gets the supplier, how much can you sell? The buyers, how much do you want to buy? He arranges for the location for the drop-off, where it should be sent to, because he shields himself from liability by having two other people be his front person. And then when the drugs come in, he distributes them. He said this in his change of plea hearing. He said this during his statement to the Homeland Security. It's not just a pre-sense report. That's where Mr. Kamara is wrong. It's based upon a factual record from his own statements to law enforcement. The fact on itself that there's some 27 pounds of drugs, 24 pounds of meth, and three pounds of heroin. The fact that nobody starts off dealing that quantity of drugs. You always have to work your way up to it. His statement that he fronts people no more than five pounds at a time. All you have to do is divide 24 by five, and you know there's more than, you know, four or five people involved here. And this is an organization that's loose. I mean, it doesn't have a firm hierarchy, but he's the driving force behind it. There could be no question about that. He has the supplier. He sets the price. He's the driving force because the drugs are coming into him and going out of him, so basically. Right. I mean, he's the one that's coordinating both the buyers and the suppliers, just like in Doe. It's factually, you can't distinguish Doe from this case of the facts. I just don't see how. I recognize that you have that early language in Kabir, but then the later language in Kabir, distinguishing Harris, says that this case is more like Doe because there's organizational authority, because the defendant in Kabir arranged how people should be trained to, you know, go on their terrorism activities, and so forth, versus all these other cases where the Harris holder, there are about two people where it's unclear whether one's controlling the other person, or there is no such control. Here, there's two defendants, but there's a lot more participants involved in the operation. There's at least five other people, and he's the only person that's controlling the methodology as to how it's happening. He's arranging, and he may not control the individuals. They can say, I don't want to buy the drugs. He can't force him to buy the drugs. Let's go to Harris. That's what I'm concerned about, is whether our case law is rather interesting. So we go to Harris, right? Now, when they're talking about the leader enhancement, you know, for some reason, and they say that, but they didn't call it organizer, leader, etc. He was either a manager or supervisor. We focus on whether he was an organizer or a leader. To qualify as such, Harris must have exercised control over others. So now we have another sentence that says that, and another opinion. Yeah, and you should also be aware that there's two opinions to make it even more confusing. One's 1990, which supports the enhancement, and one is 1996, which does not. And similar in the United States versus Whitney, we held that the enhancement was not warranted because there was no demonstration of control over others, even though the defendants had supplied a conspirator with tax forms and information, etc. So we, Doe is distinct about there being a distinction, but the rest of the cases don't seem to be distinct about there being a distinction. Well, the ones that Doe relies upon, there are. The 1990 Avila decision, as well as the Varela decision, all the drug cases seem to be different than the non-drug cases, because the drug cases involve multiple people. These other cases generally involve two people, either in the trial form situation, in the fraud situation, and that's where they get involved in the control aspect. In the drug cases, where the organization involves multiple people coordinating the activities between the seller and the supplier and the buyers, the score has been consistent. As long as the defendant is organizing that relationship, the score has found for the two-level enhancement. Well, wasn't Kabir a drug case? No. I'm sorry? Was Kabir a drug case? No. Kabir is a terrorism case. Well, there can't be any good reason for having a different rule, right? So now we really have a problem. We have one rule for drug cases and another one for non-drug cases. Well, in Kabir, it does say we're following Doe, which was a drug case, even though the facts before were not a drug case. No, so I understand that, but what I'm suggesting is that in the non-drug cases, there are almost always just two people involved. And in Kabir, it says, when it distinguishes Harris, it says most importantly in Harris, because only two people were involved in the crime, we expressly refuse to consider whether the defendant had organizational authority. So they didn't go to the second prong in Harris because there's only two people. It's hard to say there's an organization that's only two people. You could have a leader if you have the control. You don't really have an organization if there's just two people. But if there's five people or seven people or 10 people, and one person's in charge of setting the price, getting the product, arranging for the buyers, then you have organizational authority. I think what Dr. Zonskin, as some of these later cases, they talk like the control aspect relates to both. And I think your colleague on the other side acknowledged that maybe it's a different kind of control. But the problem is, what is the line? What kind of control is enough or is required for organizational control? And what kind of I think, in essence, this panel would be overruling Doe. And I know you can't do that because Doe specifically rejects that argument. Doe says that you don't have to be a supervisor. You don't have to have supervisory authority, if I remember right. That's what Doe says. But Doe does say, he uses the word influence and ability to coordinate. He says you have to have that for this organizer type. And so, and then there's later cases that say, that talk about having control. And I think Judge Brisson's point is that they do seem to apply the idea of control to both leader and organizer. So, are those reconcilable? Or is it just that the later cases kind of went off the rails? No, I think the way, if you look at the cases carefully, they do seem to distinguish between drug cases and non-drug cases. And they distinguish between cases where there's two people involved and there's multiple people involved. But we can't have a rule that has a different rule for drug cases and non-drug cases. I understand that. It could be a reason why they're talking that way, but it doesn't solve our problem as to having non-coherent case law. So, is there another way to reconcile them, other than the fact that some drug cases are being treated differently? Well, if there's more than two participants, then the cases find they go more on the organizational rather than the leadership provision. Because if there's no more than two people, then you have a organization. Especially in these drug cases, where you have five, 10, 15, 20 people involved, that's where they get into the organization. So, unless a drug case is like a mafia hierarchy, that's not the way most drug organizations work. Is there a way to, you know, Doe uses the word influence. And we talked about how, as an organizational person, you definitely can have influence, right? And so, is there some sort of overlap between the concept of control and the concept of influence that Doe talks about that an organizer would have? In other words, you don't get your drugs unless you work with me. I'm not going to shoot you in the head if you don't obey me, but you don't get your drugs if you don't work with me. Do you think that would have some influence over you if you're a self-determiner? So, if you don't mind a little story, you know, you might have seen the Seinfeld episode where they had the soup Nazi guy. And if he didn't like you, he would say no soup to you, right? So, is he controlling them because he's depriving them of the soup? Well, you could make that argument. There is that kind of implicit control because he's depriving them of the pride. If Mr. Bingey didn't want to distribute the drugs to any of those sub-distributors, he just had to say no, and you're out of luck. So, was he controlling them to that extent? Absolutely, right? And he's charging them, you know, $7,000 a pound while he's only paying $2,500 a pound. So, you know, does he have to deal with them? No. Is he controlling them to the extent that they're getting access to drugs that they otherwise would not have access to? Absolutely. Thank you. So, because what he had on there was the idea at the very end that you can have influence, a form of control, and you've already acknowledged there can be two different types of control. So, why is that not? Why was your client not having that possible kind of question as it relates to what you were referring to, like, if you don't pay me, I won't sell you any more drugs? You know, that kind of influence, which is what you were talking about. In this case, it does show, and Mr. Bingey did admit that there were some customers of his that owed him $80,000, and that some of his customers wouldn't pay, but, you know, he still would deal with them. So, that goes to show that there was really not that kind of influence that you were referring to. What I wanted to point out was, if I heard the government correctly, they said, the government said that there was control, the coordination, the distribution of the drugs, but there was no control over individuals. If I heard that correctly, that is exactly what Golden and Varelis is talking about. You need to have control over the person, the participants, not the process. The challenge is when we, the problem is we keep using the word control, but I think it's where I said that can have different meanings. And so, I mean, I assume the government's response would be, well, I mean, they didn't have control in the sense of a gun to the head control, but I wasn't conceding that they didn't have control in the sense of if you want to continue to be part of our drug co-law, then you got to play by my rules. Okay. So, your honor is asking whether that constitutes the kind of organizational control? Because Doe talks about influence, you have to have some degree of influence. You don't have to have supervision, but you have to have influence. So, does that count as the control, the ability to get people to do what you want through softer influence, as opposed to you must this or I'm going to shoot you or something. Well, okay. If you're, if the, what you're referring to is I will not do any business with you if you don't pay your bill. Okay. Now that is not the kind of, no, I know, but it's not just that, right? I mean, the whole argument is that it's a good drug co-op. You know, you have somebody sitting in the middle there, there's folk and they're talking to everybody and they're taking orders and, and they're dealing with the on the other end. And if you want to be part of our drug co-op, then you've got to be a well-behaved person in our drug co-op. Otherwise we're going to, I'm not going to deal with you anymore. That's different than just an ordinary, if you want to buy a joint for me, you got to pay me this amount of money. The scenario that I believe your honor is referring to is sort of like what the Lopez Sandoval case is talking about, where yes, you do have the mirror. Essentially, Mr. Vinge is like a middleman. Yes, he does get his cut. He does make money. He does do coordination of the process, but he is not influencing the participants. Was he, just very quickly, because you are out of time, what, in what way would you say that he falls short of being an organizer in whatever the term means, whatever influence or, or, or spokenness one has to have to be an organizer? He's falling short in terms of having control or influence or whatever you want to call it. No, really specifically, he, he is, he is, he's arranging to get the drugs, right. And he's arranging just, and he has people they sell them to. Do we, and do we know why, I guess I asked this before, how he selects the customers or does he choose the customers? Do they come to him? And what, is there any evidence of the kind that Judge Van Dyke was referring to where he says you, you need, if you do X or Y, I'm not going to say the drugs anymore. Is there anything like that? Does that matter? There, there is nothing like that in the record. Plus Mr. Vinge was the one that he would call up his customer and ask them if they wanted to buy it. And if they didn't want to buy, you know, finally moves on. That sounds like organizing. But there is no control in that respect. Either you want to buy it. I think, yeah. So then I know you're out of time, but like, I think to re-ask this question, Judge Rizzo, what would he have needed to do in your view that would have pushed him over the limit? Give us an example of something he would have needed to do. An example would be such where, for instance, if his customer owed him a lot of money, as one individual owed him $80,000, he would say, as you were referring to, I won't give you the next shipment if you don't settle up your bill. That is infallible. That has to be true. I mean, eventually he's going to stop selling this guy sooner or later, right? You would think common sense. Yes, you would think common sense. But in Mr. Bench's case, in his change of plea, and I believe in his interview, he did say that, yes, you know, there was large bills by some of his customers and they don't pay. You know, it's not like he put the screws to them because they didn't pay, which would be obviously influence. So, Your Honor, I noticed that I'm way over my time. Thank you very much. Thank you, Your Honor. Thank both counsel for their arguments. The case is submitted.
judges: BERZON, MILLER, VANDYKE